IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GUY JACKSON              *
                         *
v.                       *      Civil Action No. WMN-14-516
                         *
ALEJANDRO PENA et al.    *
                         *
   *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Pending before the Court are three motions to dismiss, filed by Defendants the Mayor and City Council of Baltimore, ECF No. 5, the Baltimore Police Department, ECF No. 13, and Officers Lester Manuyag and Alejandro Pena, ECF No. 15.  For the reasons stated, the Court determines that no hearing is necessary, Local Rule 105.6.  The motions filed by Officers Manuyag and Pena and the Mayor and City Council of Baltimore will be granted.  The Motion filed by the Baltimore Police Department will be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the police-involved shooting of Plaintiff, Guy Jackson, a resident of Baltimore City.  Plaintiff alleges that, on April 22, 2013, he was approached by two individuals on Winchester Street in Baltimore City, Larry Hooker and Rickey Dixon.  Hooker and Dixon "brandished handguns [and] ordered Plaintiff into a silver Mercedes automobile with them and ordered him to drive the vehicle to the corner of North

1

Dukeland Street and Edmondson Avenue . . ." Compl. ¶ 8.  Hooker

and Dixon ordered Plaintiff to remain in the car while they

exited and confronted two unknown individuals outside of the

car.  Shots were fired between Hooker and Dixon and the unknown

individuals.

As Hooker and Dixon attempted to reenter the vehicle, two

police officers – Defendant Officers Lester Manuyag and

Alejandro Pena – arrived at the scene and allegedly "recklessly,

wantonly, with disregard to the safety of others, and without

legal justification, began discharging their weapons into the

silver Mercedes despite Plaintiff obviously being in the

vehicle."  Compl. ¶ 10.  Plaintiff was struck multiple times by

the gunfire, in the arms, body, and head.

Following the shooting, Plaintiff was transported to

University of Maryland Shock Trauma and was placed under arrest

while being treated for his injuries.  Approximately six days

later, Defendant Detective Min of the Baltimore Police

Department removed Plaintiff from hospital care, against medical

advice, "under the guise of having Plaintiff transported to the

Baltimore City Jail Medical Facility."  Compl. ¶ 12.  Rather

than being transported to a medical facility, Plaintiff was

transported to the Baltimore Police Department and interrogated.

At the conclusion of the interrogation, Plaintiff alleges

that Detective Min ejected him from the Police Department onto

the streets of Baltimore, rather than transporting him to the Jail Medical Facility or returning him to Shock Trauma.  At the time, Plaintiff was wearing only his hospital gown and still had a feeding tube inserted.  Ultimately, members of his family returned him to the hospital.

Plaintiff filed a twelve-count Complaint in the Circuit Court for Baltimore City, which was removed to this Court. Named as Defendants are the Mayor and City Council of Baltimore, the Baltimore Police Department, Officer Pena, Officer Manuyag, and Detective Min.  Jackson alleges violations of Articles 24 and 26 of the Maryland Declaration of Rights, excessive force and seizure under 42 U.S.C. § 1983, and state law claims for battery, assault, and intentional infliction of emotional distress.  He seeks to hold not only the individual officers[1] liable for the constitutional violations, but also the Baltimore Police Department and the Mayor and City Council of Baltimore. All Defendants, save Detective Min (who simply answered the Complaint), have filed a motion to dismiss.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  Edwards v.

---

[1] Although not specified in the caption of the Complaint, it appears that Plaintiff seeks to hold the officer defendants liable in both their individual and official capacities.  See Compl. ¶¶ 2-4.

City of Goldsboro, 178 F.3d 232, 243 (4th Cir. 1999).  To
survive a 12(b)(6) challenge, a complaint need only present
sufficient factual content to render its claims "plausible on
[their] face" and enable the court to "draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Although a court must generally "accept as true all of the
allegations contained in a complaint," legal conclusions are not
entitled to the assumption of truth, nor are "threadbare
recitals of a cause of action's elements, supported by mere
conclusory statements."  Id.  A complaint need not contain
detailed factual allegations, but "a plaintiff's obligation to
provide the grounds of his entitlement to relief requires more
than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do."  Bell Atlantic Corp.
v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and
citations omitted).  Rather, "[f]actual allegations must be
enough to raise a right to relief above the speculative level."
Id.  "When there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement to relief."  Iqbal, 556
U.S. at 679.

III. **ANALYSIS**

   A. **Motion to Dismiss Filed by Mayor & City Council of Baltimore City**

The Mayor and City Council of Baltimore ("the City") contends that it should be dismissed as a Defendant.  The City argues, among other things, that the Complaint fails to allege any conduct taken by the City specifically, and that it is not legally responsible for the actions of the Baltimore Police Department or its officers.

At the outset, the Court notes that the Complaint is plainly deficient, as it does not allege any conduct on the part of the City.  To the contrary, aside from a general theory of liability spelled out in paragraph five of the Complaint, the City appears only in the wherefore clauses of Counts III, IV, VII, VIII, IX, X, XI, and XII.  Nowhere are any facts as to the City's actions or inactions alleged.  Nonetheless, Plaintiffs appear to seek inclusion of the City on the theory that it is liable, as a supervisory agency or pursuant to Monell v. Dept. of Social Servs., 436 U.S. 658 (1978), for the actions, inactions, policies, or customs of the Baltimore Police Department.

Even assuming that the Complaint's scarcity of factual allegations as to the City was sufficient, the Court would nonetheless dismiss those allegations as they pertain to the

City's supposed responsibility for the actions or inactions of the Baltimore Police Department.[2]  As the Court of Appeals of Maryland has noted "consistent[ly] and unequivocal[ly]," the Baltimore Police Department is an agency of state government, not of Baltimore City.  See Mayor & City Council of Balt. V. Clark, 944 A.2d 1122, 1128-30 (Md. 2008).  Accordingly, Maryland courts have held that the Baltimore Police Department is not an agent of Baltimore City, id., nor is Baltimore City the employer of Baltimore City police officers for tort liability purposes. Clea v. Mayor & City Council of Balt., 541 A.2d 1303, 1306 (Md. 1988) ("Thus, as a matter of Maryland law, no liability ordinarily attaches to Baltimore City under the doctrine of respondeat superior for the torts of Baltimore City police officers acting within the scope of their employment."). Federal courts have repeatedly hewed to this principle, finding that Baltimore City does not exert sufficient control over the Baltimore Police Department to be held liable under 42 U.S.C. § 1983.  See, e.g., Gray v. Kern, Civ. No. WMN-13-2270, 2014 WL 61311, at *10 (D. Md. Jan. 7, 2014); Bradley v. Balt. Police Dep't, 887 F. Supp. 2d 642, 646-49 (D. Md. 2012).

Despite this body of authority, Plaintiff argues that the Fourth Circuit's decision in Francis v. Giacomelli, 588 F.3d 186

---

[2] Baltimore City makes many alternative arguments as to why Plaintiff's Complaint is insufficient to withstand its Motion to Dismiss, which the Court need not address in this case.

(4th Cir. 2009), provides a basis for imposing liability on the
City under § 1983.  Although Giacomelli did not concern a § 1983
claim, Plaintiff asserts that the Fourth Circuit's description
of the facts in that case – which concerned then-Mayor
O'Malley's interactions with the Baltimore City Police
Commissioner – is instructive as to whether the City exercises
control over the Baltimore Police Department.  Specifically,
Plaintiff notes that in that case, as set forth by the Fourth
Circuit, Mayor O'Malley terminated the Baltimore City Police
Commissioner and that, in implementing that termination, "the
Mayor and Baltimore City Solicitor Ralph Tyler dispatched
members of the Baltimore Police Department to the Commissioner's
office" to retrieve official property and escort the
Commissioner from the building.  588 F.3d at 189.  Based purely
on this factual recitation, Plaintiff argues that the City
exercises control over the Baltimore Police Department and its
officers, and that his allegations are therefore sufficient to
state a claim.

     Plaintiff's reliance on the Fourth Circuit's statement of
facts in Giacomelli is unpersuasive.  The Fourth Circuit did
not, in that case, hold that Baltimore City's actions in that
case were legally appropriate.  Moreover, the Fourth Circuit's
analysis does not intimate that it intended any deviation from
Maryland law on the topic of Baltimore City's legal control over

7

the Baltimore Police Department.  Because the City is not responsible under § 1983 for the actions of the Baltimore Police Department or its officers, nor under a respondeat superior theory for the torts of Baltimore City police officers, Plaintiff has failed to state a claim on which relief can be granted, and Defendant Mayor and City Council of Baltimore will be dismissed.

### B. Motion to Dismiss Filed by Officers Pena and Manuyag

#### 1. Count I – Excessive Force under 42 U.S.C. § 1983

Officers Manuyag and Pena (referred to collectively as "the Officers") assert that Plaintiff's section 1983 excessive force claims must be dismissed because the force used was reasonable and, alternatively, because the Officers are entitled to qualified immunity.  Plaintiff, by contrast, contends that the use of gunfire was not reasonable because no shots had been fired at the Officers.  Moreover, he argues that the Officers are not entitled to qualified immunity because "they were clearly utilizing deadly force" and "Plaintiff had the right not to be shot."  ECF No. 24-1 at 2-3.

42 U.S. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable . . . ."  Section 1983 does not, standing alone,
provide substantive rights; rather, it is "a method for
vindicating federal rights elsewhere conferred."  Baker v.
McCollan, 443 U.S. 137, 144 n.3 (1979).  Thus, to state a claim
under § 1983, Plaintiff "must allege the violation of a right
secured by the Constitution and laws of the United States, and
must show that the alleged deprivation was committed by a person
acting under color of state law."  West v. Atkins, 487 U.S. 42,
48 (1988) (citations omitted).  Here, Plaintiff alleges that the
Officers, while acting in their capacity as police officers,
subjected him to excessive force such that it constituted a
seizure in violation of the Fourth Amendment.  The Complaint
adequately alleges that the Officers were acting under color of
law.  Compl. ¶¶ 2-3.  Thus, the relevant inquiry is whether the
Complaint adequately alleges a deprivation of constitutional
rights.

     To determine whether the Officers' conduct violated
Plaintiff's Fourth Amendment rights, the Court must consider
whether the force used to effect the seizure was "reasonable."
Graham v. Connor, 490 U.S. 386, 396 (1989).  "The test of
reasonableness under the Fourth Amendment is not capable of
precise definition or mechanical application," id. (quoting Bell
v. Wolfish, 441 U.S. 520, 559 (1979)), and thus must be
considered on the basis of the facts and circumstances of each

case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Tennessee v. Gardner, 471 U.S. 1, 8-9 (1985)).  An officer's use of deadly force is subject to the same reasonableness inquiry as other exercises of force, and will generally be deemed reasonable if the "officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Id. at 3, 9-10.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id.  Nonetheless, the reasonableness inquiry is an objective one, to be analyzed without regard to the subjective intention or motivation of the officers.  Id.

Viewing the evidence in the light most favorable to the Plaintiff, Plaintiff's Complaint fails to state a claim for

excessive force under § 1983 because it fails to state a Fourth Amendment violation.  Plaintiff's Complaint plainly states that, immediately prior to the Officers' exercise of force, Hooker and Dixon were involved in an exchange with two unknown individuals in which shots were fired.  Following the exchange, as Hooker and Dixon attempted to reenter the vehicle, the Officers arrived at the scene and fired shots into the vehicle.[3]

Even reading all inferences in the Plaintiff's favor, the allegations of the Complaint establish that the Officers had probable cause to believe that Hooker and Dixon posed a significant threat of death or physical injury to the Officers or others.  The Complaint alleges that the Officers arrived at the scene following an exchange of gunfire.  Compl. ¶ 10. Nowhere in the Complaint does Plaintiff allege that the Officers did not know, when they arrived at the scene, that gunshots had been fired.  Accordingly, an objective officer in the position of the Officers would have known only that two – potentially three – presumably still-armed individuals were attempting to leave the scene of a gun fight.  Assuming that the Officers were aware of Plaintiff's non-participation in the gun fight, as

---

[3] Reading the Complaint in the light most favorable to the Plaintiff, the Court assumes that, at the time of the Officers' shooting at Hooker and Dixon, Hooker and Dixon were not attempting to shoot at the Officers but were instead simply attempting to reenter the vehicle.

Plaintiff alleges, then the Officers would have seen only that two armed individuals were entering a vehicle containing an innocent individual who had just witnessed a gun fight.  It is reasonable, under those circumstances, for the Officers to assume that Hooker and Dixon constituted a continuing threat to the safety of the Officers or the Plaintiff.  See generally Garner, 471 U.S. at 11 ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.  Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape . . . .").

Moreover, although it appears from the face of Plaintiff's Complaint that he was not armed and did not take part as a shooter in the gunfire exchange, the reasonableness of an officer's actions are to be considered objectively, considering what the officer knew at the time and not what has later come to light through the benefit of "20/20 hindsight."  Graham, 490 U.S. at 396.  Nowhere in the Complaint does Plaintiff assert that the Officers knew he was unarmed.  Further, Plaintiff does not contend that the Officers intended to shoot the Plaintiff

specifically,[4] in contrast to Hooker and Dixon, who they plausibly suspected to be armed.  A Fourth Amendment seizure "does not occur whenever there is governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is governmentally caused and governmentally <u>desired</u> termination of movement (the fleeing felon), but only where there is a governmental termination of freedom of movement <u>through means intentionally applied</u>." <u>Brower v. County of Inyo</u>, 489 U.S. 593 (1989) (emphasis in original).  Thus, where an officer, by an intentional act of restraint, "restrains one not intended to be retrained," it is not sufficient to constitute a seizure within the meaning of the Fourth Amendment.  <u>Rucker v. Harford County</u>, 946 F.2d 278, 281 (4th Cir. 1991).  Absent any allegation, therefore, that the Officers intended specifically to restrain the Plaintiff, as opposed to Hooker and Dixon, the Complaint fails to plausibly allege a violation of the Fourth Amendment.[5]  Because Plaintiff

---

[4] Plaintiff asserts that the conduct of the Officers was "malicious[] and intentional[]."  Compl. ¶ 20; <u>see also</u> Compl. ¶ 93.  To the extent that such allegations could even support Count I of the Complaint, the Court finds them to be a bare assertion of the elements of a cause of action and unsupported by factual allegations in the Complaint to grant them an assumption of truth.

[5] Even if it did, it is unlikely that the allegation would be sufficient to state a claim for a Fourth Amendment seizure, as the Officers' conduct is not judged through the 20/20 lens of

has failed to state a § 1983 excessive force claim as to the Officers, it will accordingly be dismissed.[6]

### 2. **Count II – Violation of Articles 24 and 26 of the Maryland Declaration of Rights**

Plaintiff additionally seeks relief under Articles 24 and 26 of the Maryland Declaration of Rights. Maryland Declaration of Rights Articles 24 and 26 "prohibit employment of excessive force during a seizure." Henry v. Purnell, 652 F.3d 524, 536 (4th Cir. 2011) (citing Randall v. Peaco, 929 A.2d 83, 89 (Md. Ct. Spec. App. 2007)). Claims presented under Articles 24 and 26 are analyzed under the same standard as Fourth Amendment claims. Id.; see also Randall, 927 A.2d at 89 ("[A] claim of excessive force brought under Article 24 is analyzed in the same manner as if the claim were brought under Article 26. In both instances, the claim is assessed under Fourth Amendment jurisprudence, rather than notions of substantive due process, precisely like the analysis employed for claims brought under 42 U.S.C. § 1983." (citations omitted)). Accordingly, because Plaintiff has failed to state a claim for excessive force under § 1983 and the Fourth Amendment, so too has he failed to state a

---

hindsight, but rather through the perspective of a reasonable officer on the scene. Graham, 490 U.S. at 396.

[6] Because the Court will dismiss the § 1983 claim for failure to state a claim for which relief can be granted, it need not consider the Officers' qualified immunity argument.

claim for a violation of Articles 24 and 26 of the Maryland Declaration of Rights.

### 3. **State Law Claims against the Officers**

Plaintiff also brings state law claims for battery and intentional infliction of emotional distress against the Officers in Counts IX and XI of the Complaint.  Although the Officers seek broadly in their Motion dismissal of the entire action as against the Officers, they do not state any argument specific to these two counts.  Nonetheless, the Court notes that "the intentional tort of battery turns on the question of whether the [officer's] use of potentially lethal force was objectively reasonable."  Randall v. Peaco, 927 A.2d 83, 89 (Md. Ct. Spec. App. 2007).  Moreover, to state a claim for intentional infliction of emotional distress, the conduct alleged must be "extreme and outrageous."  Harris v. Jones, 380 A.2d 611, 614 (Md. 1977) (citing Womack v. Eldridge, 210 S.E.2d 145, 147-48 (Va. 1974)).  Because the Court has already determined that the Complaint fails to allege any "unreasonable" action on the part of the Officers, it also concludes that the Complaint fails to state a claim for battery or intentional infliction of emotional distress.  Accordingly, Plaintiff's state law tort claims against the Officers will be dismissed.

C. **Motion to Dismiss Filed by the Baltimore Police Department**

Plaintiff alleges, in Counts III and VII, that the Baltimore Police Department is liable under § 1983 for the Officers' use of excessive force, as well as for Detective Min's seizure of Plaintiff. Additionally, in Counts IV, VIII, IX, X, and XI, Plaintiff asserts that the Baltimore Police Department is liable, apparently under a respondeat superior theory, for the Officers' and Detective Min's alleged violations of the Maryland Declaration of Rights and state tort law.

1. **Counts III and IV – Violations of § 1983 and the Maryland Declaration of Rights Related to the Conduct of Officers Pena and Manuyag**

In Count III, Plaintiff alleges that the Baltimore Police Department is liable for violating 42 U.S.C. § 1983 by "allow[ing] Plaintiff's U.S. Constitutional rights (including but not limited to the Fourth Amendment) to be violated by allowing excessive force to be used in the shooting of Plaintiff by Defendants Pena and Manuyag." Compl. ¶ 26. Similarly, in Count IV, Plaintiff asserts that the Baltimore Police Department is liable for alleged violations of Articles 24 and 26 of the Maryland Declaration of Rights, as committed by the Officers. The Baltimore Police Department has moved to dismiss these claims, asserting that, because no underlying constitutional

16

violation was committed by the Officers, it also cannot be held liable.

A municipality or employer cannot be held vicariously liable, under 42 U.S.C. § 1983, for the actions of its employees based solely on an agency relationship.  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 692-94 (1978).  Rather, in order to establish municipal liability under § 1983, the plaintiff must first sufficiently allege that his or her constitutional rights were violated by the employees.  Then, he or she may allege related causes of action against the Baltimore Police Department.  To hold the Baltimore Police Department liable under § 1983, "the constitutionally offensive acts of [the] employees [must have been] taken in furtherance of some municipal 'policy or custom.'"  Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) (quoting Monell, 436 U.S. at 694).

Here, Plaintiff has failed to satisfy the prerequisite to a sufficient allegation of Monell liability – that his constitutional rights were violated by the Baltimore Police Department's employees.  Accordingly, Count III will be dismissed.  Similarly, in Count IV, Plaintiff alleges that the Baltimore Police Department is liable for the Officers' alleged violations of Articles 24 and 26 of the Maryland Declaration of Rights.  Because the Court already determined that the Complaint

fails to state a claim for a violation of Plaintiff's state constitutional rights under Articles 24 and 26, Plaintiff's corresponding contention against the Baltimore Police Department must also be dismissed.

### 2. **Count VII - Violation of § 1983 as Related to the Conduct of Detective Min**

Plaintiff asserts, in Count VII, that the Baltimore Police Department is liable under § 1983 for the alleged constitutional violations committed by Detective Min.  In moving to dismiss this count, the Police Department first asserts that the Complaint fails to satisfy basic pleading standards for its § 1983 Monell claim under Rule 8, by alleging only naked assertions and "unadorned the defendant did me wrong accusations."  ECF No. 13-1 at 12.  Alternatively, the Police Department asserts that the facts as pled do not support an underlying constitutional violation by Detective Min.  Last, the Police Department asserts that, even if the Complaint states a claim against Detective Min, it does not state a claim for Monell liability under § 1983.[7]

---

[7] The Court notes at this juncture the inadequacy of Plaintiff's briefing.  In response to the Police Department's 24-page Motion to Dismiss, Plaintiff filed an opposition memorandum only three pages in length, excluding the signature page and certificate of service (which was left blank and did not include an electronic signature).  Of this, only one page consisted of legal argument and only two citations to legal authority were included.  See ECF No. 24-1.

A plaintiff's municipal liability claim is not subject to a heightened pleading standard.  Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).  Thus, in order to survive a motion to dismiss a Monell claim, a plaintiff need only satisfy Rule 8(a) by providing "a short and plain statement of the claim showing that [he] is entitled to relief."  Lanford v. Prince George's Cnty., 199 F. Supp. 2d 297, 304 (D. Md. 2002) quoting Fed. R. Civ. P. 8(a)(2)).

As noted supra, a municipality is "only liable under section 1983 if it causes [a deprivation of federal rights] through an official policy or custom."  Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).  A municipal policy or custom "may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." Id. (internal citations omitted).  Alternatively, "a municipal custom may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law."  Id. (quoting Monell, 436 U.S. at 691) (internal quotation marks omitted).

A municipality may not, however, be held liable under § 1983 under a theory of respondeat superior.  Thus, where the

plaintiff alleges that "the municipality has not directly
inflicted the injury, but nonetheless has caused an employee to
do so, rigorous standards of culpability and causation must be
applied to ensure that the municipality is not held liable
solely for the actions of its employee." Board of County
Comm'rs v. Brown, 520 U.S. 397, 405 (1997). "[M]unicipal
liability will attach only for those policies having a 'specific
deficiency or deficiencies . . . such as to make the specific
violation almost bound to happen, sooner or later, rather than
merely likely to happen in the long run." Carter, 164 F.3d at
218 (quoting Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir.
1987)) (emphasis added in Carter).

Here, although Plaintiff does not identify with precision
the Baltimore Police Department policy custom leading to his
injury, he alleges

> that there has been a regular pattern of practice of
> misconduct similar to that complained of in the
> instant complaint; and that pattern and practice has
> been manifested in other prior incidents involving
> officers, and employees of the Baltimore City Police
> Department, and is the direct and proximate cause of
> the injuries suffered by Plaintiff by Defendant
> Detective Min.

Compl. ¶ 65. He further alleges that the Police Department

> maintained a policy of unconstitutional and unlawful
> actions to be used when no probable cause has been
> established or reasonable suspicion to suspect that
> criminal activity has occurred; and that the injury to
> Plaintiff, was not 'a single isolated, accidental, or

> peculiar event', but one in a long line of events that
> predate and post-date the incident in question.

Id. ¶ 62.  Plaintiff's Complaint thus pleads that the Police

Department established an official policy, was aware of previous

violations of constitutional rights, and nonetheless declined to

take any action to remedy those customs and policies to prevent

such deprivations.  Plaintiff need not, at this stage, "plead

the multiple incidents of constitutional violations that may be

necessary at later stages to establish the existence of an

official policy or custom and causation."  Jordan by Jordan v.

Jackson, 15 F.3d 333, 339-40 (4th Cir. 1994) (citations

omitted).  Thus, the allegations in Plaintiff's Complaint are

sufficient under Rule 8(a) to survive a motion to dismiss.

     The Police Department alternatively asserts that Plaintiff

fails to plead an underlying constitutional violation.  The

Court disagrees.  Although Plaintiff's claim is perhaps an

unusual factual scenario for a Fourth Amendment claim, there is

no question that Plaintiff was seized.  It appears to the Court

that Plaintiff adequately pleaded that the seizure was

unreasonable under the circumstances, particularly considering

the alleged deception used by Detective Min and the medical

concerns of Plaintiff's doctors at Shock Trauma.  See Garner,

471 U.S. at 8 ("[R]easonableness depends on not only when a

seizure is made, but also how it is carried out.").

Accordingly, the Court determines that Count VII is not subject to dismissal.

### 3. **Count VIII, IX, X, XI – Violation of Maryland Declaration of Rights and state torts**

Plaintiff also asserts a variety of state constitutional and tort law claims against the Police Department.  The Police Department moves to dismiss these claims on grounds of sovereign immunity.  "State sovereign immunity, unlike the immunity of counties, municipalities, and local governmental agencies, is 'total.'"  Baltimore Police Dept. v. Cherkes, 780 A.2d 410, 424 (Md. Ct. Spec. App. 2001).  Thus, the State is immune "not only from damage actions for ordinary torts but also from such actions for State constitutional torts."  Id.

State agencies are generally treated "as if they were the State of Maryland for purposes of immunity, so that they enjoy the same immunity from ordinary tort and contract suits which the State enjoys."  Id. (quoting Board of Educ. v. Town of Riverdale, 578 A.2d 207, 210 (Md. 1990)).  As it relates to constitutional torts, state agencies are immune from suit for damages.[8]  Id. at 426.  As noted supra, the Police Department is

---

[8] State agencies are not immune from suits alleging constitutional torts "when the remedy that is necessary to vindicate or protect a State constitutional right is equitable in nature, requiring a declaration of rights or injunctive relief against a State agency, or seeking a form of remedy other than damages."  Id.  Here, however, Plaintiff seeks only monetary relief.

an agency of the State of Maryland.  See Ashton v. Brown, 660

A.2d 447, 464 n.18 (Md. 1995) ("[T]he Baltimore City Police

Department, for purposes of Maryland law, is a state agency.");

Clea v. Mayor & City Council of Balt., 541 A.2d 1303, 1306 (Md.

1988) ("Unlike other municipal or county police departments

which are agencies of the municipality or county, the Baltimore

City Police Department is a state agency." (internal citations

omitted)).  Here, there is no indication that the Police

Department has waived its immunity as to Plaintiff's

constitutional or non-constitutional tort claims.  Accordingly,

Counts VII, IX, X, and XI are dismissed as asserted against the

Baltimore Police Department.

### IV.   **CONCLUSION**

For the reasons stated herein, the Motion to Dismiss filed

by the Mayor and Baltimore City of Council will be granted; the

Motion to Dismiss filed by Officers Pena and Manuyag will be

granted; and the Motion to Dismiss filed by the Baltimore Police

Department will be granted in part and denied in part.  A

separate Order shall issue.

/s/
William M. Nickerson
Senior United States District Judge

DATED: June 19, 2014